UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES O. MOORE,

   Plaintiff,

v.               Case No. 1:16-cv-1248
                 Hon. Paul L. Maloney

COMMISSIONER OF SOCIAL
SECURITY,

   Defendant.
             /

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff alleged a disability onset date of November 17, 2007. PageID.340. Plaintiff testified that his disability arose from injuries suffered in an automobile accident in November 2007. PageID.142. Plaintiff identified his disabling conditions as: head injuries; neck problems; back problems; broken bones in skull; broken ribs; and complications from the accident. PageID.340. Prior to filing his application for DIB, plaintiff completed the 12th grade and had past employment as a production machinist in an automotive factory. PageID.341, 346. The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on August 31, 2012. PageID.86-97. Plaintiff appealed the decision to this Court, which remanded the matter back to the Commissioner for further fact finding. *See Moore v.*

1

*Commissioner*, 1:14-cv-375 (Order) (ECF No. 20). On remand, the ALJ held a second hearing, reviewed plaintiff's claim *de novo*, and entered a written decision denying benefits on June 29, 2016. PageID.576-591, 601-621. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis*

*v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since his alleged onset date of November 17, 2007 and that he met the insured status requirements of the Act through December 31, 2012. PageID.578. At the second step, the ALJ found that plaintiff has the following severe impairments: history of cervical spine fusion (2003); history of facial fractures; right knee chondrocalcinosis, status post 1997 arthroscopic repair; obesity; degenerative disc disease and spondylosis of the spine; headaches; and, affective disorder. PageID.578. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.584.

The ALJ decided at the fourth step that:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: he can occasionally climb, stoop, and crouch; he can frequently balance, kneel, and crawl; he can have frequent exposure to vibration and fumes; he can perform simple, routine and repetitive work involving occasional interaction with coworkers.

PageID.585. The ALJ also found that plaintiff was unable to perform any past relevant work.

4

PageID.589.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light exertional jobs in the national economy. PageID.590. Specifically, the ALJ found that plaintiff could perform the following unskilled work in the national economy: assembler (467,000 jobs); sorter/packer (337,000 jobs); and inspector (136,000 jobs). PageID.590. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from November 17, 2007 (the alleged onset date) through June 29, 2016 (the date of the decision). PageID.591.

### III. DISCUSSION

The Court gleans two issues from plaintiff's brief.[1]

**A. The ALJ failed to properly evaluate the opinion evidence because the ALJ substituted his medical judgment for that of the doctors who treated plaintiff.**

Plaintiff disputes the ALJ's finding that he was capable of performing light exertional work, stating that "two doctors, a CE and a chiropractor all found Plaintiff capable of sub-sedentary employment." Plaintiff's Brief (ECF No. 11, PageID.1397). The gist of plaintiff's claim is that "[s]omehow, ALJ Jones found himself more equipped to render an opinion than three treating doctors, a CE and a chiropractor." *Id.* at PageID.1395. The legal error asserted by plaintiff is that an ALJ "may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Meece v. Barnhart*, 192 Fed.Appx. 456, 465 (6th Cir.2006). *See* Plaintiff's Brief at PageID.1400. In this

---

[1] Plaintiff's brief did not "contain a Statement of Errors, setting forth in a separately numbered section, each specific error of fact or law upon which Plaintiff seeks reversal or remand" as directed by the Court. *See* Notice (ECF No. 8, PageID.1385).

regard, plaintiff contends that the ALJ substituted his own medical judgment for that of the various doctors who treated him. *Id.* at PageID.1400. Ultimately, plaintiff identifies the three doctors as Drs. Stewart, Shelle, and DeWitt, identifies the chiropractor as D.C. Scott, and refers to the CE as "the 2009 psychological CE." *Id.* at PageID.1395, 1397-1400. Accordingly, the Court will review the ALJ's decision to determine whether the ALJ committed error by substituting his medical judgment in the manner proscribed by the *Meece* decision.

The record reflects that plaintiff had three administrative hearings (January 10, 2011, July 27, 2012, and June 20, 2016), and that an ALJ denied benefits in two administrative decisions. PageID.86-97, 576-591, 601-621, 626-653, 655-675. On remand, the ALJ performed an extensive review of plaintiff's medical records. PageID.578-589. *See also*, Plaintiff's Brief at PageID.1393 (acknowledging that "Plaintiff's medical history is, in general, adequately discussed in the ALJ's decision."). As an initial matter, the ALJ addressed the opinion evidence as follows.

> Family physician Dewitt completed a functional capacity form dated May 2015 (Exhibit 27F), mentioning diagnoses and symptoms, and listing limitations incompatible with an ability to perform full time competitive employment (e.g., claimant's symptoms would "frequently" interfere with his ability to sustain attention and concentration needed for simple work; claimant could sit, stand and walk about 2 hours in an 8 hour workday; claimant needed periods of walking around, shifting at will and unscheduled breaks; claimant could rarely lift less than 10 pounds; claimant needed to elevate his legs to waist level for 2+ hours during the day; claimant could use his hands, fingers or arms "0%" of the day due to paresthesias; claimant would have more than 4 job absences per month). The rather remarkable degree of limitation suggested by Dr. Dewitt is not borne out by the record, including the clinician's own progress notes discussed. As mentioned previously, Dr. Dewitt's notations were substantially compromised [*sic*] of subjective complaints, medication refills, and benign clinical findings. Dr. Dewitt's clinical records did not document meaningful problems with claimant's attention, concentration, ability to use hands, fingers or arms, etc. Dr. Dewitt's May 2015 appraisal is given little weight, because it is not supported objectively, and is contradicted by substantial evidence in the case record.

PageID.588.

> Health Specialists of Lenawee physician, Shelle completed an assessment finding claimant had depression, would frequently have pain or other symptoms that would interfere with his ability to sustain attention and concentration needed for simple work, could sit, stand and walk about 2 hours in an 8 hour workday, needed to elevate his legs to waist level for 2+ hours during the day, should rarely lift 5 pounds, would have good and bad days and more than 4 job absences per month (Exhibit 28F). I give little weight to Dr. Shelle's conclusions, because they are not well supported by, or to be [*sic*] consistent with, the record in its entirety. As discussed, Dr. Shelle provided narcotic medications, and commonly noted claimant had generalized spinal tenderness. Dr. Shelle's limited notations were devoid of abnormal objective findings relative to gait, mobility, range of motion or neurological dysfunction.

PageID.588-589.

> During October 2011 (Exhibit 19F p.9), Dr. Stewart opined that claimant would be unable to return to his job a machinist; that he would require a job that would allow frequent positional changes, and would be unlikely to tolerate a full 8-hours of work at least initially. While I concur with Dr. Stewart that claimant is no longer able to carry out the taxing exertion of his former work, I do not give significant weight to the physician's suggestion that he would be unable to sustain work at lesser demanding positions. I note that Dr. Stewart's progress notes and those of her colleagues typically show claimant to be alert and in no acute distress; to be comfortable while seated, and to make fluid transitions; to have some spinal limitation of motion and tenderness, but normal and unaided gait, preserved strength, intact sensation, etc. I give little weight to Dr. Stewart's opinion, because it overstates somewhat, the degree of claimant's dysfunction, when considering a preponderance of the evidence.

PageID.589.

> Although not a source of acceptable "medical" evidence, I considered the appraisal from Robert Scott, D.C. (Exhibit 29F). Chiropractor Scott believed claimant would frequently have pain or other symptoms that would interfere with his ability to sustain attention and concentration needed for simple work, could sit, stand and walk about 2 hours in an 8 hour workday, needed leg elevation 2-4 hours per day, could rarely lift 5 pounds, would have good and bad days and more than 4 job absences per month. Once again, the record as a whole, including claimant's daily activities, diagnostic test results, and typical clinical presentations, argue against the level of limitation found by clinician Scott. As such, little weight is given his opinions.

PageID.589.

7

Finally, the ALJ addressed the opinions expressed in the 2009 psychological consultative examination, which was performed by Merridessa Katz, MMA LLP, and Tim R. Strang, Ph. D.:

> I am aware to the comments by a June 2009 consultative psychologist (Exhibit 12F) that claimant, "is currently unable to sit, stand, walk, or lay for any period of time without pain . . . . It's going to be extremely difficult for him to maintain any type of employment at this time." Of course, the issue whether an individual is disabled or unable to work as relates to this decision is an issue reserved to the Commissioner of Social Security (20 CFR § 404.1527(e) and SSR 96-5p). Pursuant to Social Security disability regulations, an individual is not necessarily precluded from performing substantial gainful activity solely on the basis of his inability to stand or sit for prolonged periods. Moreover, the examiner is a psychologist, not an internist, or even a family or general practitioner and therefore any opinion regarding claimant's exertional functioning is incompetent as outside the examiner's area of expertise. Finally, the psychologist's comments regarding claimant's physical functioning were based solely on claimant's subjective reports, as no physical examination was performed during this evaluation, nor would the psychologist have been competent to perform a physical exam. For these reasons, this opinion must be rejected.

PageID.587.

While the ALJ gave little weight to the opinions expressed by the treating physicians, he found that the opinions expressed by the non-examining physicians were consistent with plaintiff's medical record:

> A good deal of weight is assigned to Administrative findings of fact made by nonexamining Disability Determination Service (DDS) clinicians, Russell Holmes, MD, and D. Beshara, MD (Exhibits 13F-15F). DDS consultants are highly qualified clinicians who are experts in the evaluation of issues in disability claims under the Act. The DDS delineated subjective complaints, daily activities, clinical and diagnostic study findings, in concluding claimant had medically determinable "severe" impairments, and retained the capacity to perform a range of simple and routine medium work on a sustained basis. Evidence was received subsequent to the initial DDS adjudication, which persuades me claimant is somewhat more limited than originally determined. Significant weight is given to the more recent appraisal of DDS psychologist, B. Douglass, Ph.D. (Exhibit 10A), finding claimant limited had some interpersonal limitations largely consistent with the adopted RFC. Considerable weight is also accorded the views of consultative examiner, who

> provided a detailed clinical narrative and concluded claimant was able to understand, remember and carry out simple vocational instructions; that he was able to maintain attention and concentration; and that his cognitive ability and ability to interact with others was satisfactory. This assessment is consistent with the record evidence.

PageID.588.

Finally, the ALJ made the following observation:

> I note that claimant did not engage in recommended ongoing physical therapy. Claimant reported that he did not do so due to a lack of insurance. This is a reasonable explanation. Even without expected benefit of additional physical therapy, substantial evidence in this record, demonstrates that claimant is capable of sustained worked activity within the confines of the adopted residual functional capacity.

PageID.589.

Plaintiff's brief strays from the alleged error that the ALJ "played doctor" in the most recent administrative decision, to argue that the medical evidence establishes that he is only capable of "sub-sedentary employment." *See, e.g.*, Plaintiff's Brief at PageID.1397. In essence, plaintiff is asking the Court to re-evaluate the medical evidence and determine that plaintiff is disabled because he cannot perform even sedentary work. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard*, 889 F.2d at 681. Furthermore, "[t]he decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).

The issue before the Court is whether the ALJ disregarded the medical opinions in the record and "played doctor" to find that plaintiff could perform a range of light work. As one court explained:

> The Commissioner's determination must be based on testimony and medical evidence in the record. And, as this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.

*Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir.1996). Here, the ALJ did not succumb to this temptation with respect to Dr. Dewitt, Dr. Shelle, Dr. Strang, or D.C. Scott. As discussed, *supra*, the ALJ reviewed the medical evidence and the opinions expressed by plaintiff's treating physicians and provided good reasons for the weight assigned to those opinions. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004) (the ALJ must articulate good reasons for not crediting the opinion of a treating source). Ultimately, the ALJ gave a great deal of weight to the opinions of the non-examining physicians, but reduced the lifting and carrying requirements from medium work to light work based on subsequent medical evidence. *See* DDS RFC Assessment at PageID.505. Accordingly, plaintiff's claim of error should be denied with respect to this claim of error with respect to Dr. Dewitt, Dr. Shelle, Dr. Strang, or D.C. Scott. However, plaintiff's claim should be granted with respect to Dr. Stewart for the reasons set forth in § III.B., *infra*.

### B. The ALJ erred in evaluating plaintiff's credibility with respect to his subjective symptoms.

In this claim, plaintiff contends that the ALJ failed to properly evaluate his subjective symptoms because the ALJ made his own independent medical findings in interpreting 2010 MRI results resulting in a flawed evaluation of plaintiff's credibility. This error would also apply to Dr. Stewart's opinions, which considered those MRI results.

The record reflects that Dr. Stewart reviewed the MRI results of plaintiff's thoracic and lumbar spine in her report from July 1, 2010. PageID.550-553. At that time, the doctor

summarized those results as follows:

> An MRI of the thoracic and lumbar spine was completed at St. Joe's on May 19, 2010. He has chronic appearing compression deformities at T8, T9 and T10. Assessment of the thoracic cord is somewhat limited due to motion artifact and there is increased T2 hyperintensity in the mid thoracic region noted mainly on the axial views. On the sagittal views, the cord signal appears normal and there is no evidence of significant disk protrusion or central canal stenosis.
>
> An MRI of the lumbar spine was reviewed today. It reveals bilateral pars defects at L5 with grade 1 anterolisthesis of L5 in relation to S1. At L4-5, there is a broad based right paracentral disk protrusion with associated mild right foraminal narrowing. He also has moderate facet hypertrophy but no significant central canal stenosis. At L5-S1, there is disk space narrowing and disk bulging as well as mild facet hypertrophy. There is no significant central canal stenosis or foraminal stenosis.

PageID.552.

As discussed, the doctor made recommendations regarding plaintiff's condition in October 2011, stating:

> At this point in time, his chronic neck, thoracic and low back issues have continued to limit him functionally, unfortunately. He would be unable to return to a job as a machinist. He would require a job that would allow him to change position frequently and he would be unlikely to tolerate a full 8 hours at work especially initially.

PageID.1042. Dr. Stewart provided the only medical opinion regarding the how the conditions reflected in the 2010 MRIs would affect plaintiff's ability to move and perform work related activities. While the doctor opined that the limitations were not work-preclusive, she identified two restrictions which were not addressed by the ALJ, i.e., plaintiff would need "to change position frequently" and would be "unlikely to tolerate a full 8 hours at work especially initially."

While the ALJ relied on the opinions of the non-examining DDS physicians, the physical residual functional capacity (RFC) assessment prepared by Russell E. Holmes, M.D., was dated July 6, 2009, about one year before the MRIs. *See* Dr. Holmes' RFC (PageID.504-511). In

11

other words, Dr. Holmes evaluated plaintiff's RFC without considering the MRI results. Rather, the ALJ interpreted plaintiff's MRI results as follows:

> Significantly, I note results of aforementioned, MRI, radiographic, and clinical evaluations, which do not divulge completely debilitating pathology. I am not suggesting claimant has no legitimate impairment and limitation, but rather, that these are not of a scale to provide a reasonable basis for concluding he is incapable of sustained work activity within the confines of the residual functional capacity (RFC) defined. Spinal imaging showed stable cervical fusion, and no instability, frank cord or nerve root amputation. Fortunately, claimant's facial fractures healed well, and have not resulted in notable residual complications.

PageID.586.

In *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014), the Court found that an ALJ committed a fatal error when the ALJ "failed to submit that MRI to medical scrutiny, as she should have done since it was new and potentially decisive medical evidence," and then "played doctor" when she "summarized the results of the 2010 MRI in barely intelligible medical mumbo jumbo, noting that it revealed degenerative disc disease and stenosis while ignoring the Chiari I malformation."

Based on the record in this case, the ALJ's decision suffered from a similar error, because he failed to submit the MRI to medical scrutiny and failed to address limitations identified by Dr. Stewart, a treating physician who rendered an opinion after reviewing the 2010 MRIs. Accordingly, this case should be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should re-evaluate Dr. Stewart's restrictions which were based, in part, on the MRI results.

Next, plaintiff represents to the Court that Dr. Stewart "recommended leg elevation and unscheduled breaks" and that plaintiff needed to lie down during the day (*e.g.*, "[m]oreover, Dr. Stewart's notes reference the need to lie down throughout the day for relief or in the recliner,

consistent with Plaintiff's testimony"). However, Dr. Stewart made no such recommendations or findings. These are self-reports by plaintiff. *See* PageID.123, 542, 618, 620, 1041 (cited by plaintiff at PageID.1402).

Finally, plaintiff contends that the ALJ did not properly evaluate his credibility. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

The ALJ evaluated plaintiff's credibility in pertinent part as follows:

> After careful consideration of the evidence, I find that claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical

evidence and other evidence in the record for the reasons explained in this decision.

. . .

Claimant's contentions as to the magnitude of his symptomatology and dysfunction, including her [*sic*] expressed level of pain and fatigue, and reported need to take breaks or to rest with legs elevated for extended intervals on most days, is not fully consistent with the record. . .

PageID.587. Because the ALJ did not properly address the 2010 MRI results, his evaluation of plaintiff's credibility is not based upon substantial evidence. Accordingly, on remand, the ALJ should also re-evaluate plaintiff's credibility.

### IV. Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should submit the 2010 MRI results to medical scrutiny, and re-evaluate Dr. Stewart's restrictions and plaintiff's credibility accordingly.


Dated: December 11, 2017           /s/ RAY KENT
                                   United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).